IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARILYN ALLUMS, | ) CASE NO. 1:12 CV 2245 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by Marilyn Allums for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceeding.[4] Under my initial[5] and procedural orders,[6] the parties have

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6

[6] ECF # 19.

briefed their positions[7] and filed the fact sheet[8] and supplemental charts.[9] The parties have participated in a telephonic oral argument.[10]

For the reasons that follow, I will find that the decision of the Commissioner is not supported by substantial evidence and must be remanded for further proceedings.

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Allums, who was born in 1957,[11] has a tenth grade education,[12] previously worked as a data entry clerk,[13] and lives alone.[14] Allums claims that a car accident in 1974 left her with mental and physical issues that have since worsened,[15] such that she now suffers from migraine headaches, back pain, and nervous crying spells.[16]

---

[7] ECF # 20 (Allums's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 18 (Allums's fact sheet).

[9] ECF # 20, Ex. 1 (Allums's charts); ECF # 23, Ex. 1 (Commissioner's charts).

[10] ECF # 26.

[11] Transcript ("Tr.") at 24.

[12] *Id.* at 157.

[13] *Id.* at 16.

[14] *Id.* at 16.

[15] *Id.* at 260-61.

[16] *Id.* at 16.

At step two in the sequential evaluation process the ALJ, whose decision became the final decision of the Commissioner, found that Allums had severe impairments consisting of a depressive disorder, headaches, and lumbar spondylosis.[17] The ALJ then made the following finding regarding Allums's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to tasks requiring no more than superficial interaction with the public or co-workers and no more than occasional changes in a routine work setting.[18]

The ALJ determined that this RFC precluded Allums from performing her past relevant work as a data entry clerk.[19]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Allums could perform.[20] The ALJ, therefore, found Allums not under a disability.[21]

---

[17] *Id.* at 14.

[18] *Id.* at 15-16.

[19] *Id.* at 24.

[20] *Id.* at 24-25.

[21] *Id.* at 25.

**B.     Issues on judicial review**

Allums seeks judicial review and reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Allums presents the following four issues for judicial review:

- The ALJ found at step four that the Plaintiff had the residual functional capacity for light work. This finding lacks substantial evidence because appropriate weight was not given to the opinions of Dr. Malkamaki, Plaintiff's treating physician, Dr. Sioson, a Social Security examining physician, and Dr. Klyop, a reviewing physician, who all found that Ms. Allums was restricted to sedentary activity.[22]

- If Allums is restricted to sedentary activity, her psychiatric limitations as well as her age, education and lack of transferrable skills would mean that she would "grid out" under the applicable regulations.[23]

- The RFC does not properly address the functional limitations imposed by Allums' migraine headaches.[24]

- New and material evidence of Allums' chronic hoarseness should be considered since that imposes further restrictions on any jobs that require her to use her voice.[25]

---

[22] ECF # 20 at 12-15. Allums includes in this argument that Dr. Klyop's reviewing opinion was itself endorsed and adopted by a second reviewing physician, Gary Hinzman, M.D.

[23] *Id.* at 15-16.

[24] *Id.* at 16-17.

[25] *Id.* at 17-19.

## Analysis

**A.  Standards of review**

*1.  Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[26]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[26] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[27] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[28]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.     *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[29]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[30]

---

[27] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[29] 20 C.F.R. § 404.1527(d)(2).

[30] *Id.*

-6-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[31] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[32]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[33] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[34] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[35] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[36]

In *Wilson v. Commissioner of Social Security*,[37] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[31] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[32] *Id.*

[33] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[34] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[35] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[36] *Id.* at 535.

[37] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[38] The court noted that the regulation expressly contains a "good reasons" requirement.[39] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[40]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[41] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[42] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[43] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[38] *Id.* at 544.

[39] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[40] *Id.* at 546.

[41] *Id.*

[42] *Id.*

[43] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[44]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[45] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[46] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[47] *Blakley v. Commissioner of Social Security*,[48] and *Hensley v. Astrue*.[49]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[50] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[51] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2). Only if the ALJ decides not to give the treating source's

---

[44] *Id.*

[45] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[46] *Id.* at 375-76.

[47] *Rogers*, 486 F.3d at 242.

[48] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[49] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[52] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[53]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[54] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[55] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[56] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[57] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[58]

---

[52] *Id.*

[53] *Rogers*, 486 F.3d at 242.

[54] *Gayheart*, 710 F.3d at 376.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[59]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[60] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[61] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[62] or that objective medical evidence does not support that opinion.[63]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[59] *Id.*

[60] *Rogers*, 486 F.3d at 242.

[61] *Blakley*, 581 F.3d at 406-07.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[64] The Commissioner's *post hoc* arguments on judicial review are immaterial.[65]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[66]

- the rejection or discounting of the weight of a treating source without assigning weight,[67]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[68]

---

[64] *Blakley*, 581 F.3d at 407.

[65] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[66] *Blakley*, 581 F.3d at 407-08.

[67] *Id.* at 408.

[68] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[69]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[70] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[71]

The Sixth Circuit in *Blakley*[72] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[73] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[74]

In *Cole v. Astrue*,[75] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[69] *Id.* at 409.

[70] *Hensley*, 573 F.3d at 266-67.

[71] *Friend*, 375 F. App'x at 551-52.

[72] *Blakley*, 581 F.3d 399.

[73] *Id.* at 409-10.

[74] *Id.* at 410.

[75] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[76]

**B.      Application of standards – substantial evidence does not support the decision of the Commissioner.**

This case presents the issue of how ALJs must address the opinion of a treating source.

In this case, the ALJ did not undertake the required two-step analysis of the opinion of Allums's treating psychiatrist, Dr. Malkamaki. Instead, the ALJ gives Dr. Malkamaki's functional limitations opinion of January 30, 2012, "weight to the extent it supports the conclusion [Allums] is capable of a light range of work activity."[77] The ALJ reasoned that this opinion "overstate[d]" Allums's limitations regarding lifting, posture, sitting, and standing because "there are no objective clinical or diagnostic findings" to support any restrictions.[78] Rather "[Allums] was advised to exercise daily" to relieve pain, thus creating an inconsistency between Dr. Malkamaki's opinion and the evidence.[79] In that regard the ALJ

---

[76] *Id.* at 940.

[77] Tr. at 23.

[78] *Id.*

[79] *Id.*

further stated that Dr. Malkamaki's functional opinion was based on "claimant's subjective pain complaints rather than objective findings."[80]

The two-step analysis created by the Sixth Circuit and detailed above provides that the ALJ first considers if the opinion of a treating source should be afforded controlling weight by ascertaining if the opinion is well supported by medically acceptable clinical and laboratory techniques and not inconsistent with other substantial evidence in the record. Only if a treating source opinion is not accorded controlling weight under that initial level of analysis does the ALJ then address the question of how much weight to give, examining at this stage the length, frequency, nature, and extent of the treating relationship, as well as the treating source's area of specialization and the degree to which the opinion is consistent with the record as a whole.

In all this, the ALJ must provide "good reasons" for discounting the opinion of a treating source. These reasons must be supported by evidence in the record and be articulated with sufficient clarity and specificity as to make possible meaningful judicial review of this decision.

Here, Allums primarily contends that the reasons given by the ALJ to discount the opinion of Dr. Malkamaki are not good reasons. Specifically, Allums contends that the ALJ

---

[80] *Id.*

was incorrect to state that Dr. Malkamaki's opinion was based on "subjective complaints and not objective findings."[81]

To that end, a review of Dr. Malkamaki's treatment notes from October 17, 2011, discloses that in addition to recounting Allums's complaints about pain and her prior car accidents,[82] Dr. Malkamaki's own examination contained the following relevant clinical findings:

> There is maximal tenderness to palpation over the L/S junction, mostly on the left, with moderate paraspinal hypertonicity. Lumbosacral ROM is limited to 75-80 degrees of forward flexion and 20 degrees of extension with recreation of pain in both ranges, but spine is otherwise stable. Motor exam is 5/5 throughout the lower extremities with normal tone, sensation is intact to light touch throughout LE dermatones and MSRs are equal throughout at 2-3+, and she has positive Hoffman's on the left. She has no neural tension signs. Gait is stable.[83]

Only after laying out these detailed clinical findings does Dr. Malkamaki then opine:

> Impression: Lumbar spondylosis, getting toward spinal stenosis, with clinical evidence of left LE pseudoclaudication symptoms. This has likely been a slowly progressive situation since the 1974 MVA, and she's never had a consistent conservative treatment. There have been MVAs since then that have aggravated the situation, resulting in are [sic] associated neck and thoracic myofascial symptoms as well, or possibly even spondylosis in the neck, although thankfully there are no radic symptoms in the arms.[84]

---

[81] ECF # 20 at 15.

[82] Tr. at 435.

[83] *Id.* at 437.

[84] *Id.*

I note first that Dr. Malkamaki's 2012 functional opinion rested on both the 2011 examination cited above and an examination two weeks before the functional limitation opinion – an examination that was not part of the record before the ALJ. While that 2012 examination clearly was in existence at the time of the hearing since it formed a foundation for the later functional limitation opinion, there is no record that the ALJ was alerted to the fact that an additional examination purportedly supported Dr. Malkamaki's opinion, nor was a motion made to keep the record open to receive the results of that examination. Thus, there is no good reason shown as to why the matter must be remanded to now review that second examination.

That said, relying on only the record as it was before the ALJ, the objective clinical evidence supporting Dr. Malkamaki's opinion consists of the observed range of specific motion limitations and the presence of a positive Huffman test on her left side. While not extensive and not in the nature of an x-ray or MRI, neither is this evidence non-existent nor merely based on subjective complaints of pain. Moreover, it was not discussed.

As such, given that the ALJ has collapsed the two-part test into a single inquiry, it is difficult to conclude that the ALJ has here supplied enough reasoning to permit the reviewing court to address the first prong of the *Gayheart* analysis and thereby conclude that the ALJ properly determined that Dr. Malkamaki's opinion should not be afforded controlling weight because it was not well-supported by clinical or diagnostic evidence. Further, the failure to clearly perform the second prong of the *Gayheart* analysis – an examination of the particulars of Dr. Malkamaki's treating relationship and the consistency of Dr. Malkamaki's opinion

with the record as a whole – including the opinions of Dr. Klyop, Dr. Hinzman and Dr. Sioson – all argue that a remand to more closely adhere to the requirements of *Gayheart* is proper here.

On remand, the results of Dr. Malkamaki's January 2012 examination may be considered, since they plainly were created in preparation for the functional opinion he provided later that month. But, the treatment notes of Dr. Joseph Carter relating to chronic hoarseness may not as they have not been shown to be material. As was noted during oral argument, it is doubtful that any claim resting on problems with Allums voice would meet the 12-month durational requirement.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Allums had no disability. Accordingly, the decision of the Commissioner denying Allums disability insurance benefits is reversed and the matter remanded for further proceedings consistent with this memorandum opinion and order.

IT IS SO ORDERED.

Dated: September 27, 2013                         s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge